## SWIFT v. KRAEMER et als.

R, AN unmarried man, executed two mortgages upon a lot of land. Subsequently he marries, and then executes a new mortgage to persons who pay off the first mortgages upon their being released. The release of the old, and the execution of the new, mortgage, were on the same day. The wife did not sign the new mortgage. *Held,* that, in equity, the transaction is an assignment of the first mortgages in consideration of the money advanced by the second mortgagees; not the creation of a new incumbrance, but changing the form of the old.

In such case, neither R, nor a purchaser of the property from him after the death of the wife, can hold it free of the second mortgage.

APPEAL from the Twelfth District.

Bill in equity for an injunction.

John Revalk being the owner of certain property situate in San Francisco, on the twenty-eighth day of June, 1854, executed a note and mortgage for two thousand dollars, to Lorenzo Leck and Louis Fontacelli. On the nineteenth day of July, 1854, Revalk executed another note and mortgage on same property for fifteen hundred dollars to Respondent, Charles Kraemer; both of which mortgages were recorded on the day of their respective dates. On the ———— day of September, 1854, Revalk married; and from that day forward resided with his wife upon the mortgaged property. On the eleventh day of December, 1854, the mortgagees, Leck, Fontacelli, and Kraemer, surrendered their notes to Revalk, and executed releases of their respective mortgages, and on the same day, Revalk, alone, executed a mortgage to Respondents, Kraemer and Eisenhardt, to secure the payment of a promissory note of four thousand dollars, money loaned on that day to take up the two first mortgages. Respondents subsequently brought their action against Revalk to foreclose the last mentioned mortgage. Revalk appeared, admitted the execution of the note and mortgage, but claimed the premises as his homestead. The Court decreed the whole premises to be sold, with the exception of a small portion set apart as the homestead, from which decision Revalk appealed to this Court, but the appeal was dismissed at the July

Term, 1857; on the ground that "the judgment in this case did not affect either Revalk or his wife, so far as the question of a homestead was concerned, and he alone had no right to appeal."

On the tenth day of October, 1856, the wife of Revalk died, leaving no issue. On the twentieth day of October, 1856, Revalk, for a valuable consideration, conveyed the premises in question, to Fox. And on the twenty-ninth day of October, 1857, Fox, for a like consideration, conveyed the same property to plaintiff.

Respondents, subsequent to the dismissal of Revalk's appeal, issued their order of sale, and on the seventh day of December, 1857, were about to sell the premises, when plaintiff, the then and present owner, brought his action, and enjoined the Sheriff's sale, on the ground that said sale, though void and conveying to the purchaser no title, would cast a cloud upon plaintiff's title, and otherwise do him irreparable injury.

On hearing, the Court dissolved the injunction, and decided that the mortgage of Revalk to Respondents, dated December 11th, 1854, was a lien on said premises to the extent of thirty-five hundred dollars, being the continuation of two prior mortgages executed by said Revalk before his marriage, and before any homestead right accrued—and for which sum and interest, from the eleventh of December, 1855, at the rate of two per cent. per month, judgment was entered on the tenth day of November, 1858.

Plaintiff excepted generally to the parol evidence offered by defendant, as to the time and circumstances of the execution of the releases, and of the new mortgage.

Plaintiff appeals.

*Pixley & Smith*, for Appellants.

I.   The questions of homestead in this property have been decided by this Court. (*Kraemer* v. *Revalk*, 8 Cal. 75; *Revalk* v. *Kraemer*, Id. 66; *Van Reynegan* v. *Revalk*, Id. 75.)

These decisions are the law of this case. (*Dewey* v. *Gray*, 2 Cal. 374.)

II.   The mortgage for four thousand dollars to Respondents, dated December 11th, 1854, was not a continuation of the two mortgages, one to Leck and Fontacelli, the other to Kraemer."

III.  The parol evidence on the subject of these releases was improper.  (17 Mass. 325; 4 Bro. Ch. 514; 4 Dorr, 65; 1 Johns. Ch. 429; 6 Hill, 219; 6 Vesey, 334 N.; 3 Stark on Ev. 1009; 3 Mason, 383; 1 Hill, 606; 1 Greenl. Ev. 275; Id. 276—278; 1 Phil. Ev. 549—566; 2 Stark Ev. 544—577; 2 Story's Eq. 3, 15—31.)

IV.  A mortgage fairly released under seal, without fraud or mistake, is forever gone as a lien.  (*Frazer* v. *Inslee*, 1 Greenl. Ch. R. 242; *Sarewood* v. *Eldrich*, 2 Id. 145; *Wade* v. *Howard*, 6 Pick. 492; *In matter of Coster*, 2 Johns. Ch. R. 502; *Belding* v. *Manly*, 21 Vt. 556; *Lewis* v. *Starke*, 10 Sm. & Mar. 128; *Peyltz* v. *Clark*, 5 Pet. 480; Sugden on Vendors, Vol. 3, 438; *Parry* v. *Wright*, 1 Sim. & St. 369; *Brown* v. *Stead*, 5 Sim. 536; *Stevens* v. *Godfrey*, 4 Ship. 478; *Phelan* v. *Olney*, 6 Cal. 478; *Taylor* v. *Bassett*, 3 N. H. 298.)

V.  The payment being made upon the same day that the mortgage in question was executed, does not make this payment and execution simultaneous transactions.  (4 Kent's Com. 38, 39.)

VI.  Recitals in a deed bind all parties to the deed, except where fraud, accident, or mistake, is shown to have occurred; therefore, Respondents cannot question the releases.  (5 Ham. 194; 7 Id. 227.)  The releases themselves disclose the intention, and they cannot be inquired into by reference to matters *aliunde*.

VII.  Swift had no notice of Respondent's reserved rights under these mortgages.  The notice to Smith (if any) was insufficient to charge Swift, and he is an innocent purchaser without notice.

VIII.  Respondents cannot be substituted to the rights of all the prior mortgagees, for the reason that Leck & Fontacelli are not parties to this action, and Eisenhardt had no privity with either of the other mortgagees.  (*Taylor* v. *Bassett*, 3 N. Hamp. 298.)  The cancellation of the prior mortgage was evidence of the intention to abandon the lien.

*Sidney V. Smith*, for Respondent.

I.  If Revalk and his wife were the Appellants, there could be no doubt as to the correctness of the decree of the Court below.

(*Dillon* v. *Byrne*, 5 Cal. 455; *Birrill* v. *Schie*, 9 Id. 104; *Carr* v. *Caldwell*, 10 Id. 380.) The only question is, whether the rule therein laid down extends to Appellant, Swift, who is purchaser of the property after the death of Revalk's wife. The mortgage of Respondents was of record, and imparted notice to Swift. And if it were competent for him to impeach its validity by parol evidence of a homestead, it was just as competent for the Respondents, by the same kind of evidence, to sustain it, which they did, by showing that, by the doctrines of subrogation, it was perfectly valid to the extent of the two prior mortgages, which had been made before any homestead had existed, and to cancel which it had been given. It was the duty of Swift, finding, as he did, a mortgage of four thousand dollars duly recorded, to inquire of the mortgagees as to the character of their claim. (1 Sug. Vendors, 8.) Swift relied on the fact of homestead as proving the mortgage null and void. But its invalidity did not depend alone on that fact. (*Carr* v. *Caldwell*, above.)

II. Respondents should have all the security which belonged to the mortgages to which they are subrogated. This action is a bill of review. (2 Barb. Ch. Prac. 90.) And on a bill of review a final decree can be opened and altered so as to make it conform to the justice of the case. (*Bennett* v. *Winter*, 2 Johns. Ch. 205.) The Court below not having authorized Respondents to foreclose their mortgage against the whole lot, this Court has the power to correct the decree. (*Grayson* v. *Guild*, 4 Cal. 122.)

BALDWIN, J. delivered the opinion of the Court—TERRY, C. J. concurring.

One Revalk, an unmarried man, in 1854, owned a lot in San Francisco; Leck and Fontacelli had a mortgage of two thousand dollars, and Kraemer a mortgage of one thousand five hundred dollars, on this lot. Revalk married in 1857, and, after his marriage, made the mortgage, the validity and effect of which this suit questions. His wife did not join in the mortgage. The consideration of this last mortgage was that Kraemer canceled his prior mortgage of one thousand five hundred dollars and gave five hundred dollars in cash, in addition, to Revalk, and one Eisenhardt paid the prior mortgage of two thousand dollars to Leck and Fontacelli. The release of the old, and the redemp-

tion of the new, mortgages, were done on the same day. Re-valk's wife died, and Swift, the plaintiff here, purchased the mortgaged premises. He claims now that, as he knew that the property was homestead at the time of the last mortgage, he was a purchaser without notice of any adverse claim, and that he takes the title free of the claim of the mortgagee. We do not think so. So far as the five hundred dollars is concerned, probably, within a recent decision, the husband had no right to incumber the property to that extent. But, as to the debts se-cured by the original mortgage to Leck and Fontacelli, and Kraemer, we regard the cancellation of the old mortgages and the substitution of the new, as contemporaneous acts. It was not creating a new incumbrance, but simply changing the form of the old. A Court of Equity, looking to the substance of such a transaction, would not permit a release, intended to be effect-ual only by force of, and for the purpose of, giving effect to the last mortgage, to be set up, even if the last mortgage was inope-rative. It would not permit Revalk to take Kraemer and Eisen-hardt's money and apply it in extinguishment of a prior in-cumbrance, and then claim that the property should neither be bound by the new mortgage or the old. These last mortgagees would be, in equity, assignees of the debts they paid, and be subrogated to the rights of their assignors; for, in equity, the substance of the transaction would be an assignment of the old mortgages in consideration of the money advanced. This, in effect, has been held in *Dillon* v. *Byrne,* 5 Cal. 455,; *Birrell* v. *Schie,* 9 Id. 106; *Carr* v. *Caldwell,* 10 Id. 380.

Nor does Swift stand in any better position than Revalk him-self. Swift can only claim that he bought with notice of a parol fact—not that he was the purchaser of an apparent legal title, and ignorant of any better title or equity. In other words, he bought with knowledge of the fact, which *seemed* to show a title in Revalk and wife. But this fact may be explained. What existed in parol might have been explained by parol. The mort-gage on record was, at least, sufficient to lead him to inquiry, and then he was bound to make full inquiry. That would have resulted in information as to the true state of things. But we are not aware that it has ever been held that a party is estopped by his own act or deed, or that of his privies. Revalk's posses-

sion of the premises, with his wife, was no estoppel of Kraemer to show that the premises were not homestead. If they seemed to be, from the fact of this family occupancy, and Swift bought on the strength of this appearance, he took the risk of this appearance turning out to be the reality; and, if he was deceived, it is one of the unfortunate blunders common to all speculation.

The decision of this Court in the numerous cases of Revalk touching this property, make nothing for the Appellant, for this question was not involved in those cases; and *facts* are not settled by judicial precedents, but only questions of law.

Decree affirmed.