Belknap,
June 30, 1902.

### LACONIA SAVINGS BANK *v.* VITTUM & *a.*

Where a creditor, holding as collateral security for the debt a first mortgage given to his debtor to secure a like sum, allows it to be formally discharged and takes in its place a new mortgage to himself upon the same land to secure his debt, in ignorance of a second recorded mortgage and without an intention to lessen his security, the first mortgage is deemed to subsist for his benefit as against the second mortgagee.

BILL IN EQUITY, praying that a discharged mortgage may be decreed to be in force, and for a foreclosure. Facts found, and case transferred from the November term, 1901, of the superior court, by *Peaslee*, J.

In May, 1888, Vittum was indebted to the defendants Mattoon and Busiel. Subsequently he borrowed $1,800 of one Melcher, for which he gave his note and a real estate mortgage as security. The mortgage was recorded, and it and the note were pledged by Melcher to the plaintiff bank to secure his note for a like amount. In 1890, Vittum gave Mattoon and Busiel mortgages upon the same land to secure his indebtedness to them. Their mortgages were recorded. In 1898, the bank desired to have its security renewed, and Vittum signed a new note payable to it, with Melcher as surety, and secured the same with a new mortgage upon the same land. Melcher, not having assigned the old mortgage to the bank, at its request executed a discharge thereof, which recited that the note was paid. The discharge and the new mortgage were recorded at the same time, and the old mortgage note and Melcher's note were surrendered. The bank had no knowledge of the mortgages held by Mattoon and Busiel, nor did the latter know of the Melcher or bank mortgages until about 1900. Each party understood it held a first mortgage. There was no intention on the part of any one to change the relation of the parties by the transaction of 1898; that is, the ultimate liability was Vittum's, while the bank could also hold Melcher therefor. The records of the bank show that in 1898 the Melcher note was paid, and on the same day the new note, secured by the mortgage, was discounted. The court found so far as it is a question of fact, and ruled so far as it is a matter of law, that the plaintiff bank is entitled to relief, and the defendants excepted.

*E. A. & C. B. Hibbard*, for the plaintiff.

*Albin & Shurtleff*, for the defendants.

WALKER, J.   The plaintiff seeks a foreclosure of the mortgage which it originally received as collateral security for Melcher's note.   The defendants, including the mortgagor and two subsequent mortgagees, defend upon the ground that the Melcher note and the collateral note and mortgage having been cancelled and surrendered, and a new note and mortgage having been given to the plaintiff in place of the original notes and mortgage, the plaintiff must now rely wholly and exclusively upon the last security. The effect of this claim, if valid, would be to make the plaintiff's security subordinate to the mortgages given to Mattoon and Busiel, while its original collateral mortgage constituted a first lien upon the property.   The material inquiry is: Did the parties intend to change their practical rights and liabilities by the new method they adopted of expressing the indebtedness to the bank? If not, is it equitable that the second mortgagees should become first mortgagees in consequence merely of the nominal discharge of Vittum's mortgage to Melcher?

"When a new mortgage is substituted in ignorance of an intervening lien, the mortgage released through mistake may be restored in equity and given its original priority as a lien."   1 Jones Mort., s. 971.   "This is based upon the presumption, as matter of law, that the party must have intended to keep on foot his mortgage title, when it was essential to his security; . . . and it is no matter whether the parties through ignorance of such intervening title, or through inadvertence, actually discharged the mortgage and cancelled the notes, and really intended to extinguish them; still, on its being made to appear that such intervening title existed, the law would presume conclusively that the mortgagee could not have intended to postpone his mortgage to the subsequent title.   Such cases are very numerous in our own state, and need not be cited."   *Stantons* v. *Thompson,* 49 N. H. 272, 279; *Buchanan* v. *Balkum,* 60 N. H. 406; *Hammond* v. *Barker,* 61 N. H. 53; *Internat'l Trust Co.* v. *Company,* 70 N. H. 118.   If it were held that the presumption of intention in such cases is one of fact, and not one of law, the case discloses the fact that the parties did not intend to change their relations by the transaction of 1898.   They did not understand that they were changing the bank's security from a first to a second mortgage, or modifying the effectiveness of that security in any practical respect.   Evidently, the new arrangement was made merely for greater convenience and simplicity in the statement of the indebtedness. Vittum's debt to Melcher and Melcher's debt to the bank for the same amount could be more briefly evidenced by one note than by two.   The bank's surrender of the Melcher note was not a payment of his debt, nor was its surrender of the Vittum note which

it held as collateral a payment of his debt; and Vittum's giving a new note to the bank, with Melcher as surety, in place of the original notes, was not a payment of both debts or of either, because the parties did not intend it should have that effect. *Foster* v. *Hill*, 36 N. H. 526 ; *Ward* v. *Howe*, 38 N. H. 35, 42. As the debt remained, for the payment of which Vittum's original note and mortgage were pledged to the plaintiff, the intention that the plaintiff should continue to have the same collateral for its debt must be enforced. 1 Jones Mort., s. 924 ; *Elliot* v. *Sleeper*, 2 N. II. 525. There is no equitable reason why it should not be. Mattoon and Busiel are not prejudiced by a restoration and enforcement of Vittum's first mortgage, subject to which their mortgages were given. Their position is not changed by a cancellation of the discharge of Vittum's first mortgage. *Holt* v. *Baker*, 58 N. H. 276. They have not been misled by that discharge, nor have they " done or omitted to do any act relying upon the recorded discharge " (*Internat'l Trust Co.* v. *Company, supra*, 119); hence their defence to this action presents no equities in their favor. *Cobb* v. *Dyer*, 69 Me. 499 ; *Ponder* v. *Ritzinger*, 102 Ind. 571, 575 ; *Campbell* v. *Trotter*, 100 Ill. 281 ; *Packard* v. *Kingman*, 11 Ia. 219.

The fact that the plaintiff was not the mortgagee of the original mortgage, but merely held it as pledgee, does not preclude it from the equitable relief sought in this action. It had in equity the rights of the mortgagee, one of which was that the mortgage should be deemed to subsist until the debt secured thereby was paid or discharged, and that a formal discharge of the mortgage by mistake should not enure to the advantage of second mortgagees having no equitable right dependent upon such discharge. *Causler* v. *Sallis*, 54 Miss. 446 ; *Bruse* v. *Nelson*, 35 Ia. 158. The mortgage note was pledged with the plaintiff, and this was sufficient to give it the benefit of the mortgage, whether technically assigned or not. *Whittemore* v. *Gibbs*, 24 N. H. 484, 487. The objection, if valid, that Melcher, the mortgagee, should be a party plaintiff, may be obviated by an amendment joining him with the bank.

*Exception overruled.*

All concurred.