(Nos. 24633, 24634.—

JOE KAMINSKAS *et al.* Appellees, *vs.* FRANK CEPAUSKIS *et al.*—(ANNA CEPAUSKIS, Appellant.)

*Opinion filed October 21, 1938—Rehearing denied Dec. 7, 1938.*

Olis, Vasalle & Lapinskas, for appellant.

Harold L. Reeve, Charles F. Grimes, Fred J. Woodman, and Samuel Petersen, for appellees.

Mr. Justice Jones delivered the opinion of the court:

Plaintiffs, (appellees here,) holders of notes aggregating $10,000 secured by a trust deed, brought this suit in the circuit court of Cook county to foreclose the lien of their trust deed. The consul for Lithuania filed an affidavit setting forth the claim of Anna Cepauskis, as wife of the mortgagor, Frank Cepauskis, of an inchoate dower interest in the premises, superior to plaintiffs' lien. She was made a party defendant. Plaintiffs' amended complaint asserted their right to be subrogated to the lien of the old first mortgage. The cause was referred to a master who heard evidence and reported finding that plaintiffs have a lien prior to the dower right. The chancellor sustained exceptions to this part of the report and entered a decree foreclosing plaintiffs' trust deed, subject to the dower right. This decree was reversed and the cause was remanded by the Appellate Court for the First District, with directions to enter a decree in accordance with the report and recommendations of the master. We granted leave to appeal in this cause, No. 24633, and also, in cause No. 24634, and ordered the two causes consolidated. Cause No. 24634 involves a second mortgage on the same premises and will be hereinafter considered.

The evidence shows that in December, 1928, Frank Cepauskis purchased the property in question subject to a $10,000 first mortgage in the form of a trust deed. In

December, 1929, shortly before the first mortgage matured, the owner of it delivered the note and trust deed to her attorney, Samuel Petersen, for collection. Petersen notified Cepauskis that his client demanded payment. Cepauskis then applied to Justin Mackiewich, a mortgage broker, for a refinancing first mortgage loan to replace the existing first mortgage. Mackiewich, on December 23, 1929, delivered a check for $10,000 to Petersen, who paid the proceeds to his client. No part of this refinancing loan was paid to Cepauskis. The old first mortgage notes were canceled and the trust deed securing them was released. As security for the new loan, Cepauskis executed and delivered to Mackiewich eight notes aggregating $10,000 and a trust deed conveying the same premises as in the old trust deed, and, in addition, 87 feet adjoining the premises on the south, which Cepauskis acquired subsequent to his purchase of the mortgaged premises. As to this 87 feet it is conceded appellant's right of dower is superior. In this new trust deed Cepauskis was described as a bachelor. Plaintiffs purchased the notes from Mackiewich and, default being made in certain interest payments, elected to declare the entire $10,000 indebtedness due and filed their bill of foreclosure.

Anna Cepauskis was married to Frank Cepauskis in 1895, but has always lived in Lithuania and has never been in this country. She had not seen Cepauskis for twenty-eight years before he executed the trust deed in question.

Appellant asserts the Appellate Court erred in denying her motion to dismiss the appeal on the ground that notice of appeal was not served on certain parties defendant as required by rule 34 of this court. That rule, in part, provides: "A copy of the notice by which the appeal is perfected shall be served upon each appellee and upon any co-party who does not appear as appellant," etc. (Ill. Rev. Stat. 1937, chap. 110, par. 259.34.) The defendants not served with notice of appeal are the trustee under the trust deed and the heirs of Frank Cepauskis, who died after the

foreclosure proceedings were instituted. The trustee was only a nominal defendant. The heirs of Cepauskis were served by publication and, failing to answer, were defaulted. We are unable to agree that the Appellate Court was wrong in refusing to dismiss the appeal. It is obvious the trustee was only a nominal party and had no interest in the appeal. It is likewise clear that the heirs of the mortgagor could not be affected by a reversal of the decree by the Appellate Court. The sole issue presented by the appeal was as to the relative priority of the lien of the mortgage and the dower interest. This is of no concern to the defaulted defendants, whose interests are subordinate to both. Having no interest which could be affected by the appeal, they were not necessary parties to the appeal. Anna Cepauskis was served with notice of appeal, and she cannot be heard to complain that others having no interest in the appeal were not also served.

The principal question before us is whether the doctrine of conventional subrogation is applicable as against the dower claim of appellant. This doctrine was defined by this court in *Home Savings Bank* v. *Bierstadt,* 168 Ill. 618, as that "which results from an equitable right springing from an express agreement with the debtor, by which one advances money to pay a claim for the security of which there exists a lien, by which agreement he is to have an equal lien to that paid off, whereupon he is entitled to the benefit of the security which he has satisfied, with the expectation of receiving an equal lien." The reason underlying the rule was stated as follows: "This equitable principle is enforced solely for the accomplishment of substantial justice where one has an equity to invoke which cannot injure an innocent person." This principle has been applied when money was advanced to pay off a prior mortgage and a judgment creditor claimed a lien superior to that of the new mortgagee who advanced the money. (*Tyrrell* v. *Ward,* 102 Ill. 29.) In that case we held that Bayard, who

advanced the money, was subrogated to all the rights of the prior lien holders, and that equity must treat the transaction as an assignment to him of the prior mortgage. We said: "This, every consideration of justice and good conscience demands. It would be highly inequitable and unjust to defeat the intention of the parties, and visit so heavy a loss on Bayard, when he advanced the money expressly to remove these prior liens and perfect his own. Justice and authority not only sanction, but demand, that Bayard should be subrogated to all their rights."

Appellant contends there can be no conventional subrogation as against a dower interest, and relies on section 16 of the Dower act. (Ill. Rev. Stat. 1937, chap. 41, par. 16.) This section provides: "No judgment or decree confessed or recovered against a husband or wife, and no *laches,* default, covin, forfeiture, or crime of either, no deed or conveyance of either, without the assent of the other, evinced by the acknowledgment thereof, as required by law, shall prejudice the right of the other to dower or jointure, or preclude the other from the recovery thereof if otherwise entitled thereto." We do not think this section of the statute is controlling here. It manifestly relates only to attempts to bar dower after the right has attached. Our question is whether her right to dower ever attached. Plainly she had no dower interest, save in the equity of redemption, before the release of the old mortgage, for Cepauskis purchased the land subject to the mortgage. If it is held that the new mortgage should, in equity, be regarded as an assignment of the old mortgage, Cepauskis was never seized of more than an equity of redemption, and appellant's dower interest would be in that equity only.

Tested by the rule as laid down in *Home Savings Bank* v. *Bierstadt, supra,* the holders of the notes should be subrogated to the lien of the old mortgage. Money was advanced to pay off a debt secured by a lien upon the express agreement that Mackiewich should have an equal lien to

that paid off—*i. e.,* a first mortgage which was superior to appellant's dower interest. The entire loan was used to pay off the indebtedness secured by the old mortgage; no part of it ever reached the mortgagor. There can be no doubt that if the old mortgage had been assigned to Mackiewich, or if time had been extended on it, appellant would have no claim to dower as against the holders of the notes. There is no reason, in equity, why appellant should be in a better position because of the form of this transaction. On the other hand, it would work a hardship and an injustice on the holders of the notes to hold their lien subordinate to appellant's right of dower. Mackiewich advanced the money under the express agreement that he was to receive a lien equal to that of the old mortgage paid off with his money. Reason and justice both demand that the agreement be given effect.

Appellant argues that Mackiewich knew at the time he made the loan Cepauskis was married. We are convinced the evidence does not support this contention. Moreover, we are of the opinion the question of knowledge is immaterial as far as the principle of conventional subrogation is concerned. Because of the agreement equity simply assigns the security to him. *Wilkins* v. *Gibson,* 113 Ga. 31.

The contention of appellant, as to the dismissal, is without merit and need not be discussed.

Cause No. 24634 involves a second mortgage on the same premises. At the time Cepauskis purchased the land in 1928 it was also encumbered by a second mortgage owned by George B. Archer, which Cepauskis assumed. In August, 1929, there was a balance of $6500 due and in default. To induce Archer to cancel this junior mortgage and to accept in exchange new notes in the sum of $6500 and a new junior trust deed, Cepauskis stated, in an affidavit, as the purpose of the transaction, that the new mortgage was to take the place of the old, and that the affiant was a bachelor. The master found the new mortgage was merely a substi-

572

tution for the old, and that Archer's lien was superior to the dower right of Anna Cepauskis. The chancellor sustained exceptions to this part of the report. The Appellate Court reversed the decree of the chancellor and remanded the cause, with directions to enter a decree in accordance with the master's report.

In addition to the contentions advanced in cause No. 24633, which are answered by our holdings therein, appellant urges that inasmuch as Archer filed no cross-bill he is entitled to no affirmative relief by way of subrogation. It is our opinion that in this case no question of subrogation is involved. There was only a change in the form of the security. The substitution of the new mortgage for the old was a continuation of the lien and an extension of the time of payment of the old. (*Campbell* v. *Trotter*, 100 Ill. 281.) Archer did not ask for affirmative relief but only claimed that by accepting the new mortgage in substitution for the old he did not lose his priority over the dower claim.

For the foregoing reasons the orders of the Appellate Court are affirmed.

*Orders affirmed.*